J-S24044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN P. STIVER | : | |
| | : | |
| Appellant | : | No. 907 WDA 2020 |

Appeal from the Judgment of Sentence Entered July 31, 2020
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001897-2018

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

CONCURRING MEMORANDUM BY DUBOW, J.:**FILED: SEPTEMBER 27, 2021**

I agree with the Majority's disposition in this case and its reliance on the trial court's thorough analysis and reasoning. I write separately, however, to highlight those portions of the trial court's Opinion that I find dispositive.

**Issue I** – The trial court properly denied Appellant's request for the appointment of a forensic pathologist and a firearms/ballistics expert because Appellant did not question the cause or manner of death, or the location of the bullet entry into Victim's body. Rather, Appellant's defense was that he shot the Victim in self-defense. Moreover, Appellant did not specify to the trial court the manner in which the expert report was relevant or material to his claim of self-defense.   *See* Tr. Ct. Op., dated Oct. 28, 2020, at 49-56, 59.

_____

[*] Former Justice specially assigned to the Superior Court.

**Issue 2**: The court properly permitted the Commonwealth to introduce computer-generated animation ("CGA") because the police officer properly authenticated it and the CGA was relevant to depict accurately the Commonwealth's theory of the case. Also, the CGA aided the jury by showing the changing positions of Appellant and Victim during the confrontation and the trajectory of gunshot. Further, the trial court properly issued a cautionary instruction to jury. *Id*. at 60-67.

**Issue 3**: There was no **Brady** violation because it was not the police who obtained the video that Appellant claims was exculpatory, and the video was never in the possession of the Commonwealth. In addition, there was no evidence of bad faith or withholding by the Commonwealth. Moreover, the video did not capture Appellant's and the Victim's interaction during the confrontation. At most, the video shows that Victim carried a baseball bat and was cumulative of other evidence that the Victim had a bat in his hands during the confrontation. Finally, the presentation of the video would not have resulted in a different verdict. *Id*. at 19-21.

**Issue 4**: After Juror #11 told the tipstaff that she thought one witness had not testified credibly, the court conducted a colloquy of Juror #11, who testified under oath that she could still be fair and impartial and would hold the Commonwealth to its burden of proof. The juror did not share her conclusions with any other juror. Based on Juror 11's responses to court's questions under oath and the court's observations of her demeanor, the trial

court properly concluded that Juror 11 could remain fair and impartial. *Id*. at 23-25.

**Issue 5**:  The trial court properly exercised its discretion in permitting the Commonwealth to introduce evidence of a defense witness's *crimen falsi* convictions, which included 1976, 1986, and 2000 theft convictions in Pennsylvania as well as other out of state convictions. Since the prior convictions were convictions of the defense witness, and not Appellant, the prior convictions would not have smeared Appellant's character. Additionally, there was no other direct avenue for the Commonwealth to impeach the witness's credibility.  As the trial court concluded, the probative value of the prior convictions substantially outweighed their potential prejudicial effect, and the court provided a proper limiting jury instruction.  *Id*. at 30-35.

**Issue 6**:  The "Castle Doctrine" did not apply in this case because there was no evidence that Victim unlawfully and forcefully entered Appellant's vehicle or attempted to do so or that Victim tried to remove Appellant from his vehicle.  In addition, the Castle Doctrine does not apply when the occupied vehicle is being used for criminal activity and, here, there was evidence of a prior drug transaction and the evidence suggested that Appellant was engaged in criminal activity and used his vehicle to further that activity. *See* 18 Pa. C.S. § 505(b)(2.2)(iii) (where the actor is engaged in criminal activity or is using his vehicle to further criminal activity, the presumption provided in

subsection 2.1, that an actor has a reasonable belief that deadly force is necessary to defend himself, is not applicable). *Id.* at 8-9.

**Issue 7**: The court properly exercised its discretion in precluding evidence of the mental health of a Commonwealth witness where the witness was competent to testify at trial. Although the witness had, at one time, been placed on suicide watch in prison and transferred to a mental health hospital, Appellant did not develop a record regarding when that event occurred in comparison to when the witness had the conversation with Appellant that was the subject of the witness's testimony. *Id.* at 69-70.

**Issue 8**: The court properly exercised its discretion in permitting introduction of autopsy photos where the Commonwealth agreed to crop and grayscale the photos to lessen the gruesome nature of the photos, and the court issued a cautionary instruction. The photos were relevant and probative to aid the jury's understanding of Victim's injuries and the cause/manner of death. *Id*. at 73-74.

**Issue 9**: The court properly denied Appellant's motion to sever his charges for PWID and theft from the remaining offenses. Even though the drug transaction happened several hours before the murder, evidence showed the crimes were of one continuous criminal episode; there was a logical and temporal relationship between the acts; the drug transaction that "went bad" formed the basis and explanation for everything that occurred later that day

when Appellant confronted the Victim; and to sever the charges would have confused the jury. *Id.* at 82-83.

**Issue 10**: Sufficient evidence supported the First-Degree Murder conviction where it showed that Appellant and his cohorts were "lying in wait" for Mark Adams and Victim following a prior drug transaction that went bad. Evidence showed that Victim had previously stolen money from one of Appellant's cohorts, so they decided to "burn" Victim by not providing him with drugs for which the Victim had paid. When Victim realized that he had been cheated, he and Mark Adams drove to confront one of Appellant's cohorts. Appellant was there at the time and ultimately shot Victim with shotgun and drove away at high speed. Significantly, Appellant had two means of retreat from the confrontation which defeated his claim of self-defense. Thus, the evidence was more than sufficient to support the First-Degree Murder conviction. *Id*. at 86-95.[1]

Judge King joins the concurring memorandum.

President Judge Emeritus Stevens concurs in the result.

---

[1] To the extent Appellant asserts a challenge to the weight of the evidence within his discussion of Issue 10, we conclude that Appellant waived it for failing to develop it beyond boilerplate case law and one conclusory sentence. *See* Appellant's Br. at 79-80.